NCRC Tennis, LLC v Fromm (2025 NY Slip Op 51536(U))

[*1]

NCRC Tennis, LLC v Fromm

2025 NY Slip Op 51536(U)

Decided on September 26, 2025

Supreme Court, Westchester County

Jamieson, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on September 26, 2025
Supreme Court, Westchester County

NCRC Tennis, LLC, Plaintiff,

against
Eric Fromm, Defendant.

Index No. 67745/2025

Bartels & Feureisen, LLP
Attorneys for Plaintiff
2 Depot Plaza, Suite 303
Bedford Hills, New York 10507
Kudman Trachten et al.
Attorneys for Defendant
488 Madison Avenue, 23rd Floor 
New York, New York 10022

Linda S. Jamieson, J.

The following papers numbered 1 to 6 were read on this motion:
Papers   
Numbered
Notice of Motion, Affirmation and Exhibits 1
Memorandum of Law 2
Affidavit and Exhibits in Opposition 3
Memorandum of Law in Opposition 4
Reply Affirmation 5
Reply Memorandum of Law 6
Defendant brings his motion seeking to dismiss this action in favor of another one also pending, in Federal District Court in Connecticut. Defendant filed his action in Connecticut only two business days after plaintiff filed this action. Plaintiff argues that the motion should be denied because New York is the proper venue for litigating the parties' disputes.
The relevant facts are as follows. Plaintiff operates a tennis facility located in New Canaan, Connecticut. Defendant Fromm lives in New Rochelle. As set forth in the complaint, Fromm was "specifically engaged to direct the management of the personnel and physical facilities operated by" plaintiff, pursuant to a contract that does not contain a forum selection clause. Eventually, as things began to unravel with defendant's work at the facility, the complaint alleges, plaintiff hired an employment consultant to review Fromm's performance and his interactions with the employees.
According to the complaint, "Fromm's behavior with the employees was in direct contravention of NCRC's policies and constituted 'serious misconduct' as contemplated by Paragraph 12(a) of the termination provisions of the Agreement." The consultant asserted that the stress that defendant was causing was becoming apparent to the club members, and was having an extremely negative impact on the overall business. Plaintiff terminated defendant's contract in May 2025. The complaint contains one cause of action, for a declaratory judgment that defendant was terminated for cause and is thus not entitled to a lump sum payment.
Defendant states in his reply affirmation that the parties were engaged in negotiations throughout June and July, but when it became apparent that they had come to an impasse, plaintiff filed this action, only two business days before defendant filed his action. Now, defendant brings his motion to dismiss on the ground of forum non conveniens. This doctrine "is codified in CPLR 327(a), which says in relevant part: 'When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just.'" Mashreqbank PSC v. Ahmed Hamad Al Gosaibi & Bros. Co., 23 NY3d 129, 135—36 (2014) (Emphasis in original).
The Second Department has explained that forum non conveniens "permits a court to stay or dismiss an action where it is determined that the action, although jurisdictionally sound, would be better adjudicated elsewhere. In a motion to dismiss on the ground of forum non conveniens, the burden is on a defendant challenging the forum to demonstrate relevant private or public interest factors which militate against accepting the litigation here. The court's determination will not be disturbed on appeal unless the court has failed to properly consider all the relevant factors." Those factors include "the residency of the parties, the potential hardship to proposed witnesses including, especially, nonparty witnesses, the availability of an alternative forum, the situs of the underlying actionable events, the location of evidence, and the burden that retention of the case will impose upon the New York courts. The court has discretion whether or not to retain jurisdiction. The court's determination will not be disturbed on appeal absent an improvident exercise of discretion or a failure to consider the relevant factors." Jackam v. Nature's Bounty, Inc., 70 AD3d 1000, 1001, 895 N.Y.S.2d 508, 510 (2d Dept. 2010). See also Haussmann v. Baumann, 2025 WL 1435989, at *1 (May 20, 2025) ("If the courts below considered the various relevant factors in making such a determination, 'there has been no abuse of discretion reviewable by this Court,' even if we would have weighed those factors differently.").
In his motion, defendant contends that the only connection to New York in this matter is [*2]that defendant lives in New Rochelle. Specifically, he argues that "NCRC operates exclusively in New Canaan, Connecticut. Fromm was hired to work from, and the Agreement specifically designates his place of employment as, NCRC's tennis facility in New Canaan, Connecticut. All the employees that Fromm managed as NCRC's Chief Executive Officer worked from the same location in New Canaan, Connecticut. All material events concerning Fromm's employment, including his interactions with NCRC's employees and customers/members, occurred at NCRC's facility in New Canaan, Connecticut. And all or nearly all of those employees and customers/members, and other witnesses, are Connecticut residents." Defendant also contends that because plaintiff merely has a declaratory judgment claim, while he has four claims (for breach of contract, breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress and defamation), he is the "true plaintiff." Defendant further asserts that "NCRC's race to file its defensive declaratory judgment action in this Court just a few days before Fromm commenced the CT Federal Action was a calculated move designed to deprive Fromm of his choice of forum and obstruct the adjudication of his claims by hindering his access to the Connecticut-based evidence and witnesses that are crucial to the resolution of this dispute."
In its opposition, plaintiff states that Westchester County is the appropriate forum for this litigation, because (1) the assigned Judge is in Hartford, which is much further from plaintiff's facility than White Plains is; (2) "a substantial number of the club's customers reside in New York State. Based upon my review of company records, at least 760 of our customers list a New York address;" (3) "based upon company records at least three (3) of the employees who are potential witnesses are residents of the State of New York. This includes Greg Johnstone, Adriana Isaza-Mowins and Juilan Labriola;" (4) "Fromm's role was not simply limited to supervising employees in New Canaan. For example, Fromm failed to mention that he took the lead in our plan to acquire a new tennis facility in Mount Kisco, New York. As part of this plan, Fromm engaged in direct negotiations with the owners' representatives and extensively inspected the facility. All of this activity took place in New York; (5) plaintiff's managing member's office is in Rye Brook; and (6) plaintiff's counsel is in Westchester.
In reply, defendant rejects plaintiff's characterizations of the customers and employees, among other things. Although plaintiff's witness, Anthony Domino, stated that "at least 760 of our customers list a New York address," it did not go unnoticed by the Court that plaintiff failed to mention what percentage of its customers that number was. Defendant asserts that "NCRC has more than 10,000 customer names in its database, the overwhelming majority of whom were inactive at the facility during my tenure. To my knowledge and belief, the 760 'customers' that Mr. Domino references includes [sic] many inactive, or barely active, users. . . . Mr. Domino's affirmation does not identify a single customer resident in New York who might reasonably be expected to be a witness at trial. To my knowledge, the great majority of the total customers who used the facility during my tenure were Connecticut residents."
Next, with respect to the three employees who live in New York, defendant states that one of them, Julia Labriola (misspelled by plaintiff), did not start work at NCRC until after he was terminated. Again, while plaintiff mentioned three employees, it failed to mention how many other employees there are. Defendant states that "during my tenure as chief executive officer, NCRC employed about 25 to 30 employees at any given time. Thus, 23 to 28, or more than 90%, of those employees, were then and, I expect, still are Connecticut residents."
As for the issue with the Mount Kisco facility, defendant responds by stating that the [*3]"activities in connection with NCRC's plan to acquire a facility in Mount Kisco did not involve my supervision of NCRC's employees or interaction with its customers. Those activities, therefore, have nothing to do with NCRC's asserted grounds for my termination being for 'cause.' Only my alleged conduct in Connecticut is implicated by the dispute concerning whether my termination was for 'cause.' The dispute implicates no conduct in New York." Finally, defendant points out that plaintiff's managing member's office in Rye Brook is for an unrelated consulting business, nothing to do with NCRC.
The Court must consider the relevant factors. The Court begins with the residency of the parties. Plaintiff is a Connecticut resident, and defendant is a New York resident. Notwithstanding this, defendant has opted for Federal District Court in Connecticut. This factor weighs in defendant's favor. With respect to this action being assigned to the District Court located in Hartford, this does not matter, for two reasons. First, pursuant to 28 USC § 1404, the parties may ask to have the case moved to a different division in the District of Connecticut that is located closer to New Canaan, such as Bridgeport ("Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district."). Second, the only people who would ever have to travel to the District Court for conferences, should the case remain in Hartford, would be the parties' counsel and at times, possibly the parties. As for plaintiff's chosen counsel not being admitted in Connecticut, that is easily rectified with a pro hac vice request.
Turning more specifically to the convenience of the witnesses, these potentially include employees, only two of whom do not live in Connecticut; customers and importantly, the employment consultant. Plaintiff has submitted to the Court no information about where the employment consultant, whose report is cited in the complaint, is located. Defendant believes that this indicates that the consultant is located in Connecticut.[FN1]
While the Court cannot make any assumptions about where the consultant is located, it clearly is not a factor that weighs in favor of this jurisdiction. The employees, numbering more than two dozen, according to defendant, largely live in Connecticut.[FN2]
This factor favors Connecticut. 
As for the customers, plaintiff mentions that 760 of them live in New York, without mentioning the total number of customers or the number of active customers. Defendant contends that there are 10,000 customers total in the database, many of whom were inactive. If [*4]defendant is correct that only 760 out of 10,000 live in New York, this factor would weigh in favor of Connecticut. Even if more of the employees and customers did live in New York, however, it would not be inconvenient for them to appear for a litigation in Connecticut, since they have already chosen to work or play tennis in Connecticut. Aside from appearing at trial, any pretrial proceedings can occur in New Canaan, or at any other mutually-agreed location that minimizes the inconvenience to the witnesses.
The Federal District Court is an appropriate alternative jurisdiction, as discussed above. The parties can attempt to make the forum even more convenient, by seeking relocation to Bridgeport. This factor is neutral, since both courts are appropriate. Similarly, the burden on New York courts is also neutral, since this case would be no more burdensome to this Court than any other Commercial Division litigation. 
The remaining factors are "the situs of the underlying actionable events, [and] the location of evidence." Turay v. Beam Bros. Trucking, 61 AD3d 964, 966, 878 N.Y.S.2d 391, 393 (2d Dept. 2009). There can be no dispute that all of the evidence and the situs of the underlying events are both in Connecticut. This weighs in favor of Connecticut; all of the documents and any other evidence necessary to this action are all located in New Canaan. Once they are digitized, however, they can be reviewed readily by anyone anywhere, which also minimizes any potential burdens on New York-based counsel.
Having considered all of the factors presented to the Court, the Court determines that Connecticut, where all of the evidence is, where nearly all of the witnesses are located, where the events occurred, and which is a legitimate alternative forum, is the proper place for this litigation. The Court urges the parties to seek to change the situs of the litigation from Hartford to Bridgeport, but notes that even if that is unsuccessful, the pretrial proceedings should not require too many trips to Hartford by anyone other than counsel. The motion to dismiss the action is granted. See Kefalas v. Kontogiannis, 44 AD3d 624, 625, 848 N.Y.S.2d 180, 181 (2d Dept. 2007) ("Among the factors the court must weigh are the residency of the parties, the potential hardship to proposed witnesses, the availability of an alternative forum, the situs of the actionable events, and the burden which will be imposed upon the New York courts, with no one single factor controlling.").
The foregoing constitutes the decision and order of the Court.
Dated: September 26, 2025
White Plains, New York
HON. LINDA S. JAMIESON
Justice of the Supreme Court

Footnotes

Footnote 1:In his affidavit, defendant states that "NCRC discloses neither the identity nor the business or residential location of the 'employment consultant' whose findings allegedly served as the predicate for NCRC's termination of Fromm's employment. If the consultant were also based in New York, NCRC surely would have said so in its opposition. The Court can therefore safely assume that the consultant is based in Connecticut or some other state where the Court lacks subpoena power. The unidentified consultant unquestionably is a key witness in the parties' dispute, and Fromm's inability to compel the consultant to come to New York to testify at trial will severely prejudice his case."

Footnote 2:Plaintiff's website lists 13 tennis professionals as the only staff. Presumably there are other employees as well, such as office and support staff. In any event, even if these 13 are the only employees, only two out of 13 residing in New York still weighs in favor of Connecticut.